(No. 38666.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES RICHARD DUNCAN, Plaintiff in Error.

*Opinion filed May 29, 1968.*

WARD, J., took no part.

WILLIAM J. COONEY, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JAMES R. TRUSCHKE, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

A jury in the circuit court of Cook County found defendant, James Richard Duncan, guilty of the murder of Samuel Schwartz and fixed his punishment at imprisonment for a term of 30 years. A constitutional question gives us jurisdiction.

About 10:00 P.M. on October 4, 1959, Samuel Schwartz, a 15-year-old boy, was stabbed and killed on the elevated platform of the Chicago Transit Authority at 22nd Street and State Street in Chicago. There were no witnesses to the murder. The People's evidence connecting defendant with the crime was the testimony of two boys, Carl Remmer and Louis Mayberry, who said that shortly after 10:00 P.M. on that night they saw defendant at 2222 South State Street and he told them he had just killed a "stud" on the 22nd Street elevated station a few minutes before and produced the knife he used. A written confession given to the police on November 12, 1959, was also admitted in evidence.

Defendant denied making an oral confession to the youths who testified for the People and said that the written confession to the police was coerced. He said he was at a dance from 8:30 P.M. until midnight on the night of the murder. Six other youths corroborated his alibi. However, four teenage girls testified that defendant was at the elevated station shortly before the murder, although two of the girls on cross-examination could not fix the time they had seen defendant.

Defendant first argues that his written confession was coerced by the police officers. He testified that on October 9 he was taken to the police station with other boys from

his housing project and questioned about the murder from about 5 p.m. until 10 P.M. and on October 17 he was again taken to the police station and questioned about the murder for about 3 or 4 hours. On October 21 defendant was arrested for disorderly conduct. (While the record is not clear on the point, it would appear that defendant and two companions were using profane language in the elevated station at 58th Street. A police officer talked with them, defendant argued with the officer and only he was arrested.) He was taken to a judge, his case was continued to November 12 and he was held in custody at the House of Correction pending his trial on the disorderly conduct charge. After he was there three days, he was put into the "hole" for talking when the lights were out. The "hole" was described as a cell with no bed and the prisoner is fed only one meal a day at 3 :00 P.M. Defendant was confined in the "hole" until the morning of November 12 when he was taken to court about 9 :00 A.M. on the disorderly conduct charge. The judge had him sign a peace bond and he was released. As he was leaving the courtroom, two police officers took him to the eighth floor of the same building.

The police began questioning him about 9 :30 A.M. Defendant claims he was slapped several times and threatened with brass knuckles. The police officers all denied that there was any physical violence or threat of physical violence. The questioning continued until about 1 :30 P.M. when defendant confessed, and about that time he was given a sandwich, a candy bar, a bottle of soda pop and a cigarette. He was questioned further that afternoon and at 7 :42 P.M. he signed a written confession. He was formally charged with murder about 20 minutes later.

The People quote the familiar rules applied in reviewing the admission of an allegedly coerced confession that the trial court need not be convinced beyond a reasonable doubt of the voluntary nature of a confession, and that the decision of the trial court will not be disturbed unless mani-

festly against the weight of the evidence. Cases are also cited where the illegal detention and questioning was longer than in this case and there were controverted claims of beating and threats of violence and yet the trial court's decision to admit a confession has been upheld. Nevertheless, determinative factors as to the admissibility of a confession include not only the illegal detention and its duration, the interrogation and its duration, the controverted claims of physical violence and threats of violence, but also include disregard of the rudimentary necessities of life, failure to advise the accused of his right to counsel and other constitutional rights, isolation from family or friends, and the accused's age, education, emotional characteristics and experience in criminal matters.

Defendant was a 17-year-old high school dropout who turned 18 while he was in custody awaiting trial on the disorderly conduct charge. The police had questioned him for some 8 to 10 hours on two previous occasions prior to his arrest and incarceration for disorderly conduct on October 21. About October 25 Carl Remmer told the police defendant had told him he stabbed a boy on the 22nd Street elevated platform. Defendant was at about this time placed in the "hole" where he stayed for 18 days, slept on the floor, received only one meal a day and saw neither family nor friends. On the morning of November 12, immediately after defendant was released on a peace bond, the police, with information they had possessed for the past 18 days, apprehended defendant in the courtroom and, took him to a room upstairs, handcuffed him to a chair and questioned him until he orally confessed at 1:30 P.M. and signed a confession at 7:42 P.M.

Except for the denial of physical violence or threat thereof, all of the other relevant factors which tend to show that the confession was not given voluntarily are not denied by the People. And, while the record does not demonstrate that the police had defendant placed in the "hole" for 18

days in order to obtain a confession, it does demonstrate that they knowingly took advantage of the situation. The total combination of circumstances surrounding the giving of the confession indicate that it was involuntary and it was error to admit it in evidence: *People* v. *Price,* 24 Ill.2d 46.

Other trial errors alleged by defendant are not likely to recur on a new trial of the cause. The judgment of the circuit court of Cook County is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.